# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01764-COA

IN THE MATTER OF THE ESTATE OF                            **APPELLANTS**
MARION KING, DECEASED:
SUSAN ATKINS AND KEVIN ATKINS

v.

JOYCE KING                                                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/2018 |
| TRIAL JUDGE: | HON. C. MICHAEL MALSKI |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | BEN LOGAN |
| ATTORNEY FOR APPELLEE: | SARAH CLINE STEVENS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 05/26/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.     The executors of the estate of Marion King appeal from a judgment holding that the assets of a pest control business that King once owned and operated were the property of King's wife, Joyce, and not of his estate. The chancery court's judgment is supported by substantial evidence. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Marion King departed this life in August 2012. He was eighty-seven years old. He was survived by his wife of thirty-two years, Joyce, and his daughter, Susan Atkins. Marion's will named Susan and her husband, Kevin Atkins, as co-executors and left his

entire estate to Joyce, Susan, and Kevin to "share and share alike," i.e., one-third to each. The executors filed a petition to probate the will, and Joyce waived process and joined the petition. The chancery court granted the petition.

¶3.     In 2015, the executors filed a motion to compel an accounting and determine ownership of a business (Mid South Pest Control[1]) and to require Joyce to deliver assets of the business to the estate. The executors alleged that Marion owned Mid South Pest Control, an unincorporated sole proprietorship or partnership, at the time of his death and that Joyce had wrongfully "converted" the business's assets to her "exclusive use and control."

¶4.     In March 2018, the chancery court ruled that Joyce was "the sole and rightful owner of Mid South Pest Control" and that Marion's estate "own[ed] no interest in the business." The court cited a purchase agreement, promissory note, and bill of sale, all signed in 1989 or 1990, by which Marion had conveyed Mid South Pest Control to Joyce. The court also cited an operating agreement for Mid South Pest Control LLC, dated October 1, 2012, that named Joyce and her son, Jerry Hadaway, as the LLC's two owners/members.[2] The court further stated that the executors had failed to appear at the March 2018 hearing on the matter. The court ruled that "any claims of ownership . . . of Mid South Pest Control other than those asserted by Joyce . . . [were] dismissed with prejudice and [that] ownership of Mid South Pest Control [was] confirmed solely in Joyce."

---

[1] "Mid South" is hyphenated in some documents, but more often it is not. We omit the hyphen throughout this opinion, including in direct quotations from the record.

[2] Hadaway passed away in 2017. Pursuant to the operating agreement, his interest in the LLC passed to Joyce upon his death.

2

¶5.    In June 2018, the executors filed a motion to set aside the March 2018 order. They alleged that they did not receive notice of the March 2018 hearing and that the court's ruling against the estate was entered by mistake. The court subsequently granted the executors' motion to set aside the March 2018 order and set the matter for a new hearing.

¶6.    Following the hearing, the chancellor entered a memorandum opinion and judgment. The chancellor again held that Joyce was "the sole and rightful owner of Mid South Pest Control" and that Marion's estate "own[ed] no interest in Mid South Pest Control." The chancellor reached this conclusion for two reasons. First, the chancellor stated that the executors' claim appeared to be barred by an October 2017 agreed order entered in Jerry Hadaway's estate (*Hadaway*), which was also pending before the same chancellor. The *Hadaway* order found that Marion had conveyed Mid South Pest Control to Joyce and, therefore, that Marion owned no interest in the business at the time of his death. For that reason, the *Hadaway* order denied a similar claim that the executors, on behalf of Marion's estate, had asserted against Hadaway's estate. Second, the chancellor stated that even if the *Hadaway* order "did not exist," he would have reached "the same conclusion" based on the evidence and testimony presented in this case. Accordingly, the court held that the estate's claims to ownership of the assets of Mid South Pest Control were "dismissed with prejudice." The executors filed a notice of appeal from the chancery court's judgment.

**ANALYSIS**

¶7.    On appeal, the executors argue that the *Hadaway* order does not bar their claim and that the chancellor erred by finding that Marion validly conveyed Mid South Pest Control to

Joyce prior to his death. Joyce argues that the chancellor's ruling was correct and should be affirmed. She also suggests that this Court lacks jurisdiction because the chancery court's judgment was not final and appealable. We address the jurisdictional issue first.

¶8.    As set out above, the executors allege that Joyce wrongfully converted assets that belong to Marion's estate, and they seek to recover those assets on behalf of the estate. The chancery court's judgment declared Joyce the "sole and rightful owner" of the disputed assets and "dismissed" the executors' claim against her "with prejudice." The judgment is final and appealable because it finally adjudicates and dismisses (with prejudice) the estate's claim against Joyce for the return of the disputed assets. The Supreme Court and this Court have previously exercised jurisdiction over appeals from judgments deciding similar claims filed by executors to recover assets that allegedly belonged to an estate. *See Johnson v. Collins*, 419 So. 2d 1029 (Miss. 1982); *In re Estate of Hemphill*, 186 So. 3d 920 (Miss. Ct. App. 2016). In addition, the Supreme Court and this Court have specifically held that a judgment allowing or disallowing a creditor's claim against an estate is final and appealable. *In re Estate of Philyaw*, 514 So. 2d 1232, 1236-37 (Miss. 1987) (holding that a decree allowing a contested claim is appealable even if the estate remains open); *In re Estate of Holmes*, 188 So. 3d 1229, 1232 n.3 (Miss. Ct. App. 2015) ("[B]oth the Mississippi Supreme Court and this [C]ourt have exercised appellate jurisdiction over timely appeals from orders either allowing or disallowing claims against still-open estates."). There is no sound or logical reason to *require* an immediate appeal from a judgment allowing or disallowing a creditor's claim *against* an estate but *prevent* an immediate appeal from a judgment dismissing a claim

4

brought *by* an estate. Therefore, we hold that the chancery court's judgment was final and appealable.

¶9.     As to the merits of the appeal, we will affirm the judgment of the chancery court if it is supported by substantial evidence, unless the chancellor abused his discretion, clearly or manifestly erred, or applied the wrong legal standard. *In re Estate of Hemphill*, 186 So. 3d at 932 (¶46). The chancellor, as the trier of fact, is the sole judge of the credibility of witnesses and the weight of the evidence. *Mayton v. Oliver*, 247 So. 3d 312, 322 (¶¶33-34) (Miss. Ct. App. 2017). We review questions of law de novo. *In re Estate of Hemphill*, 186 So. 3d at 932 (¶47).

¶10.     The executors argue that the chancellor erred by holding that the order in *Hadaway* barred their claim in this case. The *Hadaway* order purports to be an agreed order presented and signed by counsel opposite with the permission of the executors' attorney. On appeal, the executors allege that their attorney never reviewed or approved the order—though, as Joyce notes, the executors made no such allegation in the trial court. The executors also argue, inter alia, that the *Hadaway* order does not bar their claim because they voluntarily dismissed their claim in *Hadaway* once they learned that the Hadaway estate had no claim to an ownership interest in Mid South Pest Control based on the terms of the LLC operating agreement. *See supra* n.2. Although we acknowledge the executors' arguments on this issue, we conclude that it is unnecessary to address the preclusive effect of the *Hadaway* order. As the chancellor found, the evidence and testimony presented in this case is sufficient to establish Joyce's ownership of Mid South Pest Control.

¶11. Joyce produced a promissory note and an agreement to sell Mid South Pest Control, both dated December 27, 1989, and a bill of sale for Mid South Pest Control dated January 2, 1990. Marion signed the agreement and the bill of sale, and Joyce signed the agreement and the promissory note. There is no allegation or evidence that Marion's signatures were forged, that he was not competent to sign the documents, or that the agreement was the product of fraud or duress. On their face, the documents show that Marion sold Mid South Pest Control and all of its assets to Joyce in exchange for her promise to pay him $20,000. Joyce testified that she subsequently paid Marion $20,000, though she no longer had records of the payments. She also testified that she had worked in the business—answering the phone and doing the bookkeeping, payroll, and taxes—throughout her thirty-two year marriage to Marion without ever receiving a paycheck. According to Joyce, Marion decided to sell her the business in 1989 for reasons that had to do with his or her future Social Security benefits. After Marion's death, Joyce and her son, who also worked in the business, formed an LLC to conduct business. As noted above, Joyce's son died in 2017, at which point she again became the sole owner of the business.

¶12. The executors presented evidence that until his death, Marion continued to be listed as the proprietor or owner of Mid South Pest Control in various tax forms, licenses and certifications, and advertisements. However, Joyce testified that by the time of his death at age eighty-seven Marion did little or no work in the business. Joyce testified that Marion continued to hold himself out as the owner as a matter of "pride," and she never objected because she "didn't want to hurt his feelings." She also testified that he continued to be

6

listed on various forms just because she or the accountant "never changed" them.

¶13. Based on all of the evidence, the chancellor found that Marion validly sold Mid South Pest Control and all of its assets to Joyce in 1989, long before his death, and that Joyce thereafter ran the business and was its legal owner. Thus, the chancellor found that Joyce was "the sole and rightful owner of Mid South Pest Control" and that Marion's estate had no ownership interest in the business or its assets. The chancellor's ruling is supported by substantial evidence, and the executors have identified no legal error in the judgment.

¶14. **AFFIRMED.**

    **CARLTON, P.J., GREENLEE, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND McDONALD, J.**

    **WESTBROOKS, J., DISSENTING:**

¶15. The majority affirms the chancery court's decision regarding the ownership of Mid South Pest Control. While I do not disagree with the majority regarding the ultimate outcome of this case as it pertains to the ownership of Mid South Pest Control, the majority does not, in my opinion, adequately address the issue of jurisdiction. Because I find the jurisdictional issue has merit, as discussed below, I respectfully dissent.

¶16. Even if the parties fail to raise the issue, "this Court is required to note its own lack of jurisdiction." *Michael v. Michael*, 650 So. 2d 469, 471 (Miss. 1995). "Generally, parties may only appeal from a final judgment." *Walters v. Walters*, 956 So. 2d 1050, 1053 (¶8) (Miss. Ct. App. 2007). "A final, appealable judgment is one that adjudicates the merits of the controversy which settles all issues as to all the parties and requires no further action by

7

the [chancery] court." *Id.* at 1053 (¶8). "Without a Rule 54(b) certification, an interlocutory order is only appealable if the Mississippi Supreme Court grants permission under Rule 5 of the Mississippi Rules of Appellate Procedure; this Court has no jurisdiction to hear it otherwise." *Jeffers v. Sagat*, 235 So. 3d 103, 106 (¶8) (Miss. Ct. App. 2017) (citations omitted). Even though the judgment is final as to one issue, for such a judgment "adjudicating fewer than all of the claims to be made final and appealable under Rule 54(b), the trial court must make an expressed direction for the entry of final judgment and an expressed determination that there is no just reason for delay." *Id.* at (¶10) (quoting *Walters*, 956 So. 2d at 1054 (¶12)).

¶17. This Court has consistently held trial courts to a relatively strict adherence to the language referenced in *Walters* and *Jeffers*. Specifically, in *Jeffers*, this Court explained how explicit the trial courts must be:

> However, the chancery court did not certify the judgment under Rule 54(b). 'For a judgment adjudicating fewer than all of the claims to be made final and appealable under Rule 54(b), the trial court must make an expressed direction for the entry of final judgment and an expressed determination that there is no just reason for delay.' *Walters*, 956 So. 2d at 1054 (¶12). Here, while the chancellor directed the entry of a final judgment, satisfying the first requirement, nowhere in the order does the chancellor state that there is no reason for delay. Therefore, we find the judgment was not a final, appealable order.

*Jeffers*, 235 So. 3d at 106 (¶10).

¶18. With specific regards to estates, this Court has addressed such matters in *Rush Foundation Hospital v. Carlisle*, 269 So. 3d 222 (Miss. Ct. App. 2018). In *Rush*, this Court agreed with the precedent cited above by stating that the "[t]rial judge's decision whether to

8

certify a judgment as final under Rule 54(b) is discretionary. However, should he elect to certify the judgment as final under Rule 54(b), he must do so in a definite, unmistakable manner." *Id*. at 225 (¶7). The estate in *Rush*, like the estate in the case currently before this Court, acknowledged *In re Estate of Philyaw*, 514 So. 2d 1232 (Miss. 1987). In *Philyaw*, our Supreme Court held that a decree allowing a creditor's claim against the estate was final for purposes of beginning the thirty-day period in which an administrator may appeal. *Id*. at 1236-37. This Court in *Rush* made several distinctions by stating "*Estate of Philyaw* considered a judgment that resolved all disputed issues. In addition, *Estate of Philyaw* reviewed an issue from an estate filed in 1981, prior to the effective date of [the] Mississippi Rules of Civil Procedure." *Rush*, 269 So. 2d at (¶8). In holding that there was no final judgment in *Rush*, this Court stated that "the June 23, 2016 judgment denying Rush's claim did not adjudicate all claims, rights, and liabilities involved. No Rule 54(b) certification appears in the record; thus, the judgment was interlocutory." *Id*. at (¶10) (citations omitted).

¶19.   Looking at the instant case, the judgment entered by the chancellor was a dismissal of several pending motions, including a motion to compel, filed by Marion's estate attempting to determine ownership of Mid South Pest Control. All parties involved have other potential and already accrued interests in the subject estate besides the ownership of Mid South Pest Control. The chancery court made no express certification in the judgment as required in Rule 54 and as outlined in *Jeffers*. In fact, the language used by the chancellor expressly references other claims not resolved by the subject order as outlined in paragraph

21 of the subject order:

> Accordingly, based upon the testimony and documentary evidence the Court finds (1) that Joyce King is the sole and rightful owner of Mid South Pest Control, (2) the Estate of Marion King owns no interest in Mid South Pest Control, and (3) any and all claims asserted against Mid South Pest Control, except those of Joyce King, are dismissed with prejudice.

Based upon the authority referenced in this opinion and the chancellor's own choice of language in the subject order, it is ambiguous at best as to whether or not the chancery court intended this to be a final appealable order. As discussed in *Rush*, *supra*, there was no Rule 54(b) certification or any language coming close to the requirements. Had the chancellor included such language, we might not be here, but he did not. The very purpose of the requirements of *Rush* is to prevent spending time discussing whether or not an order is appealable. What language was included leaves open to interpretation what was intended. As such, I would remand this case and request that the order be amended to specifically reflect the language required for appealable orders.

¶20. The judgment was not a final appealable order. Absent a specific expression and certification from the chancery court, this interlocutory matter is not properly within the jurisdiction of this Court. I would dismiss this appeal for lack of jurisdiction and remand this matter to the chancery court for clarification of the order pursuant to this opinion. Therefore, I respectfully dissent.

**BARNES, C.J., AND McDONALD, J., JOIN THIS OPINION.**